TO   Zachary CrosseN

RE:  Suit

from  Joseph Dyer

Date   6-9-17

---

Please find Plaintiffs suit against
you, & also find Plaintiffs
Y#166 Admissions to be answered
By you

| **CLERK'S NOTICE** | DOCKET NUMBER<br><br>1784CV01504 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br>Joseph Dyer vs. Steward Health Care System et al | | Michael Joseph Donovan, Clerk of Court |
| TO:<br>Joseph Dyer<br>Donald W. Wyatt Detention Center<br>#96901038<br>950 High Street<br>Central Falls, RI 02863 | | COURT NAME & ADDRESS<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

You are hereby notified that on 05/17/2017 the following entry was made on the above referenced docket:

ORDER: After a review of your petition and correspondence, the Court has instructed the Clerk's Office to take the following action:  Service is to be made upon defendant(s) by means of certified mail at the plaintiff's expense, and you must return to the court the original summons with the green receipt card for each defendant.   (Karen Green, Justice)  Notice Sent
05/17/2017

| DATE ISSUED<br>05/18/2017 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>**Hon. Karen Green** | SESSION PHONE#<br><br>(617)788-8175 |
|---|---|---|

# Certificate of Service

Joseph Dyer "prose"

-V-

Steward Health Care System "et.al"

I Plaintiff Joseph Dyer do say and swear that on 6-9-17 I served Defendant Zachary Crossen, via certified mail with a copy of the Complaint and Admissions

Sworn under the pains & penalties of perjury

Respectfully Submitted

Joseph Dyer

"prose"

Joseph Dyer #96901038
Donald W. Wyatt Detention
#950 High Street
Central Falls, RI
02863

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _17-1504_

Joseph Dyer pro se "PLAINTIFF(S),

v.

Steward Health Care System et al DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO Officer Zachary Crossen (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Civil Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Court, _____ (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _____

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

*Michael Joseph Donovan*

Michael Joseph Donovan

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on ____6 - 9 - 17____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

*By means of certified mail, return receipt*

Dated: ____6 - 9 - 17____, 20___          Signature: *Joseph Dyer*

*pro se*

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

    6 - 9 - 17

Commonwealth of Massachusetts
Suffolk Superior Civil Court

Joseph Dyer "pro.se"        # Civil action
-V-

Steward Health Care System "et.al"
Carney Hospital "et.al"
City of Boston "et.al"

Complaint

Parties

#1.) Joseph Dyer Plaintiff

#2.) Steward Health Care System "et.al"

#3.) Defendant Carney Hospital "et.al"

#4.) Defendant Walter J. Ramos

#5.) Defendant City of Boston "et.al"

#6.) Defendant Officer Zachary. Crossen,

#7.) Defendant Officer Thuan Duc Lai,

#8.) Defendant Dr. Michael Riley

# Jurisdiction

This Honorable Court has the Jurisdiction, over this Matter

Pursuant to 28 U.S.C. §1332
42 U.S.C.A. §1983
M.G.L.A. ch 12, §§ 11H-11I.
U.S.C.A. Const. Amends. #5, #14, #4th
M.G.L.A. CONST. pt #1, Art #14,
Also Medical Negligence claims
Massachussetts Declaration of Right
Artical X.I.V. Violation
Chapter 258 General Laws
At All Time Relevant Defendants

Steward Health Care System "et al" Owns a operates the for Profit Carney Hospital "et al" who's New President is Walter J. Ramos who is responsible for the daily running, training, security, overall teaching of Constitutionally secured rights to All it's Staff, Doctor, Nurses, or Patients, rights while under Carney Hospitals care,!

City of Boston "etal" is employer of officers Crossen, and Lai, and are responsible for the lack of training of these officers, and are liable for all intentional violations of Plaintiffs civil rights as well as Constitutional right, and torts

# Continue

This Honorable Court has the
Jurisdiction over this Matter

Pursuant 28 USC § 1332
42 U.S.C.A. § 1983
M.G.L.A. ch. 12, §§ 11H - 11I
U.S.C.A. Const. Amend. #4th #5th #14 #8th
M.G.L.A. Const. Pt. #1, Article #14,
Also Medical Negligence
M.G.L.A. ch. 258 tort Claim act
Massachusetts Delcration of Rights
Cause of action

At all times relevent Officers Lai,
and Crossen, "induced" Dr. Riley to
become an agent of State by lying
to Dr. Riley to violate plaintiff Civil
Right, Because, they thought Plaintiff
would not or could not do anything
about it, Dr. Riley would have Never
known anything about a history of
packing items into Plaintiff "rectum"
if Officers didn't Lie to Dr. Riley, if the
first Place, Officer intentionally also
held plaintiff down, So they both acted
under, color of State Law, and conspired,
intimidate, sexually Assaulted, for reason
of obtaining evidence to implicate
plaintiff so as to have Dr. Riley do what
they were not allowed to, evidence
seized under illegal search, Fruit
from poision free, But they found Nothing!

# Cause of Action

Police May Not avoid the requirments of the fourth Amendment by inducing, promoting, or encouraging, private parties to perform "searches," they would Not otherwise perform USCA, 42, §1983, Dr Michael Riley's actions were "unlikely," to be undertaken without State or Police Officers Zachary Crossen and Officer Thuan Duc Lai, Encouragement, The US Supreme Court has stated that "it is Axiomatic" that a "State," or Officer, "May Not," induce, encourage, or promote, a private person to accomplish what is Constitutionally "Forbidden" by the State.

A private parties Search as in Dr Riley May be attributed to the State, when the private party acted as an "agent," or an "instrument," of the Goverment in conducting the search, Police Officers Crossen and Lai, May be held liable for Dr Riley's Search, when Police "ordered" or were Complicit in the Warrantless anal Cavity Search of Plaintiff Dyer,

Officer Crossen gave false information to Dr Riley, and "that" "false information "induced Dr Riley to perform a very unconstitutionally "intrusive," procedure that he would Not otherwise have performed "Every" reasonable Officer would have understood that their Conduct violated the fourth Amendment

continued �threshold

2

# Cause of action

"NO"! reasonable officer as in Officers Crossen, and Lai, could have believed that they could, avoid responsibility for and unconstitution anal cavity/search perform without a warrant, by a Judge, would go unprotested, due to their using "deeption," to induce, Dr. Riley by using coercive power, or significant encouragement, either overt, or covert,

U.S.C.A. 42 § 1983 Dr. Michael Riley To hold a private actor as in, Dr. Riley, personally liable as a state actor, or agent in a 42 § 1983 the plaintiff Must show & establish, Not only did Dr. Riley, a private actor get "induced" by Officers Crossen, & Lai, But also Dr. Riley intended to "assist" these officers in obtaining evidence of a crime for their investigation, Dr. Riley is subject to Plaintiff's 4th Amendment claim only when Plaintiff, has formed the nessesary "intent to assist" the investigation

Anwser is If Dr. Riley found any drugs inside the Plaintiff's rectum, he would give the drugs to Officers Crossen and Lai, even without a Warrant!

Dr Riley is also liable



# Facts

#1) ON 5-13-15 Plaintiff Joseph Dyer was put under arrest for drug possession by the D.C.U. after a physical altercation.

#2) After the physical altercation plaintiff began having Chest Pains

#3) D.C.U. Officer called EMT's to aide plaintiff; to Carney Hospital

#4) While EMT's were attending to Plaintiff, D.C.U. Officers were instructing Officers Zachary Crossen and Officer Thuan Duc Lai, that they were to Escort Plaintiff to Carney Hospital

#5) Inside the Ambulance Officer Crossen told Plaintiff that he believed Plaintiff still had drugs hidden in Plaintiff's rectum

#6) Inside the Ambulance Officer Crossen told Plaintiff that "he" was going to give Plaintiff a rectal exam

#7) When we got to the E.R at Carney Hospital Officer told the EMTs to Put me the gurney face down on My stomach. This was Officer Crossen He told Plaintiff He was going to order the Doctor to perform a anal cavity search



# facts

**#8.)** Officers Crossen and Lai cuffed both of the Plaintiff's hands to the bottom of the gurney, so Plaintiff could not move or resist in anyway

**#9.)** Both Officers Crossen and Lai began "forcefully taking off Plaintiffs sneakers, socks, pants, underwear," Crossen cutt Plaintiffs shirt off Plaintiffs back, Crossen, also broke off plaintiffs gold chains, took off two rings,

**#10.)** Plaintiff began to become scared and thats when Officer Crossen slapped Plaintiffs buttocks, saying I know you Like that your My bitch Now!

**#11.)** I was screaming help, That's when Office Crossen struck his finger "inside My" buttucks until his finger rubbed around plaintiffs "rectum."

**#12.)** Plaintiff was screaming "Rape" Help" thats when Crossens, partner Officer Lai, started laughing saying "stop crying you sound like a bitch

**#13.)** Plaintiff felt violated, intimidated, scared, confused, Hate, anger, loss, less than, Helpless, Victumized, sexually assaulted,



#3

#14.) That when Defendant Dr. Michael Riley came in the room and "saw" Crossen's hand coming out of Plaintiffs buttucks

#15.) Dr. Riley asked Officer Crossen what the "Hell" are you doing! Thats when Both Officers Crossen, and, Lai, Pulled the Dr. Riley out of the exam Room But Not before I said you just "Saw" what he did?

#16.) When Dr. Riley, and, Crossen, Lai had return Dr. Riley Told Me that the Officers stated that I got caught with drugs in my buttucks today

#17.) Dr. Riley stated the Officers asked him to give me a rectum exam

#18) At No time did Dr. Riley see a Warrant to perform, a rectal, examination, a Court Ordered examination, anal cavity search

#19) At No time did Officers Crossen, or Lai, Call their "Superiors" to get authorization to even request a rectum exam, court ordered

#20 At No time relevent did Dr. Riley attempt to get Superiors or any authorization to perform Rectum exam

#21.) At All Times relevent Plaintiff was denied #14th Amendment due process rights when Officers faid to secure a Judges warrant, and Dr. Riley and Officer Lai, and Crossen, Conspired to violate the Plaintiff's #4th Amendment right also with their illegal search of plaintiffs rectum!

#22.) Article XIV does not permitt police to enlist Civilians such as Dr. Riley to aid in a search of the anal cavity, unless a "Judges warrant" explicitly Authorizes it

#23.) When Dr. Riley asked Plaintiff did he have drugs inside his rectum I said "NO"!

#24.) Dr. Riley Kept asking me to submitt to a anal, cavity search, but Plaintiff would continue to refuse all examinations

#25.) Dr. Riley drugged or sedated Plaintiff against Plaintiffs consent or knowledge of what Plaintiff was taking

#26.) After a Short time to let the "Haldol" and "Ativan" to take effect, Dr. Riley told Officers Lai, and Crossen, to hold Plaintiff down so Plaintiff couldn't resist by Kicking, but Plaintiff was still screaming "Rape" "Help"! But who? was going to go against a Boston Police Officers?



#27.) Plaintiff was yelling that Dr. Riley and Officers Crossen, Lai, were violating his "_Civil Rights_"!

#28.) Plaintiff begged Dr. Riley not to perform the anal cavity search

#29.) Plaintiff told Officers he was going to sue, them for telling Dr. Riley to violate this civil rights

#30.) Plaintiff told Dr. Riley that he was going to sue him and bring him before the Medical Tribunal

#31.) Dr. Riley stated and I quote "I don't think so, your not smart enough to sue me"! end quote

#32.) and, Acting as an agent of the Police Dr. Riley inserted two finger into Plaintiff's rectum, while Plaintiff screamed

#33.) At All times Relevent Nurses would yell and open the curtain telling officers to keep plaintiff quite, So if the Nurses heard the plaintiffs crying out other Doctors Supervisors, Head treating Physicans, Directors of Medical E.R, Should have known some thing was wrong!


#6

#34) At All time relevent Plaintiff made it plain to Dr. Riley and Officers, Lai, and Crossen, that plaintiff did NOT "CONSENT" to any "pelvic X-Ray

#35) At All times relevent Officers, Lai, and Crossen, interfeard, with the Plaintiff's Medical reason for going to Carney Hospital, Chest Pains,

#36) The first thing that was attended to was Officers Crossen, and Lai, Warrantless search of Plaintiff's anal cavity, which is a sexual assault

#37) The Second thing that was attended to was Dr. Rileys Warrantless anal cavity search, Not Plaintiff's Chest Pains, another sexual assault

#38) The third thing that Dr. Riley attended to was a Warrantless X-Ray of Plaintiff's pelvis area to see if Plaintiff had drugs inside his rectum

#39) At NO time did Plaintiff give his consent to any of the three previous thing mentioned, also Plaintiff Never gave Dr. Riley any permissision to tell said Officers the results of any X-Rays

#40.) At All times relevent Defendant
"City of Boston "et al," has an ongoing
"Custom" with Hospitals within the
City of Boston that the Commissioner
Knows, that Officers abuse

41) At All times relevent the Police
Commissioner of Boston Police had
Knowledge that his subordinates
and Officers under His Command
were using the "premise" of an
arrestee swollowing something would
allow officers to bring a arrested
or under investigation person to the
Hospital and say that the person had
swollowed something and it would
compell any civilian Doctor to
"forcefully" violate the Constitutional and privacy

Civil     rights  of the person, by taking
rights   the person stomack X-Rays and
violation  cavity searchy, pelvis X-Rays and said
person would had his consent rights
stripped away and it would leave
the Officers 'immune from any
liablity. And the Medical professional
could "Claim that he was a life or
death ~~decides~~

#42) At All times, Relevent the Commissioner
still has Not disapline, trained, addressed
this Civil Rights violation, which is
a "Custom of D.C.U. and other officers
are to this day still used as a Custom or pactice

#43.) At All times relevent Officers Lai, and Crossen, Never put on the Plaintiff Incident report that they had Dr. Riley perform a anal cavity search on Plaintiff pursuant to Boston Police Department Rules and Procedures Rule#318-D

#44.) At No time relevent did Officers, Lai, or Crossen, inform there Duty Supervisor about getting a warrant in accordance with established Police Dept procedure (see, order 95-5)

## Relief

Plaintiff seeks relief in the amount of Two million dollars from City of Boston, Two million dollars from "each" officer in their individual capacities

Plaintiff seeks $5. Million dollars from defendant Steward Health Care System "et al" Carney Hospital "et al"

Plaintiff seeks $2. Two million dollar from defendant Dr. Riley

Wherefore the Plaintiff demands Judgement against all defendants in said action for damages, and any such other relief this Honorable Court deems Just.

# Relief Continued

If this Honorable Court should
Not grant summary Judgement
to plaintiff, Plaintiff demands a
trial by Jury

Plaintiff Demands a Jury trial

Respectfully
Submitted

Joseph Dyer, prose

Joseph Dyer #96901038
At
Donald W. Wyatt Detention Center
#950 High Street
Central Falls, RI
02863

CC. file

# Affidavit of indigence

Joseph Dyer prose

-V-

Steward Health Care System et.al"

I Joseph Dyer 015 64-3809 DOB 1-28-69 swear and state under the pains & penalties of perjury

That I'm on a fixed income of $100. dollars per month which a friend sends me, so I can buy cosmetic's, Food, I spend $25. dollars per week! I have No kids, spouse, Homes, bank accounts other than inmate account, I own No property., No assets, investments

I state again under the pains & penalties of perjury, then statements made in this Affidavit are TRUE I have Not omitted any assest to avoid payment of fees & costs

Joseph Dyer #96901038
Donald W. Wyatt Detention
#950, High st
Central falls RI 02863
C.C. file

Respectfully
submitted
Joseph Dyer prose

# Exhibit
# Dr Riley's Phone interview

The following is a summary of the interview and not a word for word transcription except where words and phrases are bracketed with quotation marks.

The witness stated he could only speak for a few minutes because he was on duty in the emergency room and that it was "kind of busy tonight". The witness stated he definitely remembered the Victim because the Victim had filed a complaint against him with the Board of Medicine. The Witness stated that he spoke with the Board of Medicine and when he explained the situation the "Board dismissed it out right". The Witness stated that he knew exactly "where you are coming from" in reference to the Victim's report of sexual assault.

The Witness stated the Victim arrived by ambulance on a gurney- handcuffed. The Witness described the Victim as "screaming and yelling and very loud the whole time". The witness further stated the Victim was yelling at everyone that they were violating his civil rights. The Witness stated that he was not concerned about the Victim's ability to breathe given his behavior:

The Witness stated he was debriefed by the Officers who were escorting the Victim. The Witness learned from the Officers that the Victim has a history of "packing drugs, hypodermic needles and other weapons in his rectum". Due to this information the Witness decided to perform an abdominal x-ray and a rectal exam.

The Witness stated the Victim was briefly turned over as he had arrived on his back. The Witness stated the Officers assisted in holding the Victim down during the examination. The Witness stated that the Victim was "briefly" on his stomach and then returned to his back.

The Witness stated he also took a chest x-ray but did not perform an EKG test. The Witness did not recall any visible injuries on the Victim. The Witness could not recall if the Victim's clothing had been cut off.

The Witness did not have any complaints about the actions of the Boston Officers. He said the Officers were not antagonistic in any way toward the Victim.

The Witness provided his cell phone number (919-824-6538) so that he may be contacted at a more convenient time other than while he was at work. The Witness stated it would be best to reach him just prior to his shift starting at the hospital.

Sergeant Detective Besold upon completion of the conversation with the Witness then called Sergeant Detective Hoffman and related the above information. Both agreed to set up a recorded interview with the Witness at a later date.

Investigation ongoing.

September 14, 2015
Interview 16:00 -16:36 hours

18

*Exhibit ①*



One Schroeder Plaza, Boston, MA 02120-2014

June 9, 2015

Joseph Dyer, A122210
M.C.I. Concord
P.O. Box 9106
Concord, MA 01742

Re:   **Public Records Request**

Dear Mr. Dyer:

You have requested documents that are potentially in the possession, custody or control of the Boston Police Department under the Massachusetts Public Records Law (M.G.L.c.66, § 10). Specifically, you requested a copy of any and all rules and procedures pertaining to "cavity searches".

In response to your request, enclosed please find a copy of Rule 318D (Strip Search, Visual Body Cavity Search, and Body Cavity Search Procedures) of the Boston Police Department's Rules and Procedures.

Please be advised that this office does not provide legal assistance, opinions or explanations about police policy to the public, and will not respond to any such request. If you have been denied records by the Boston Police Department, you have the right to appeal this decision with the Supervisor of Public Records at the Public Records Division of the Secretary of the Commonwealth.

Should you have any questions or require any additional information, please do not hesitate to contact this office.

Sincerely,

Office of the Legal Advisor
617.343.4550

Mayor Martin J. Walsh



*Exhibit* ②




## STRIP SEARCH, VISUAL BODY CAVITY SEARCH, AND BODY CAVITY SEARCH PROCEDURES

This rule is issued to establish guidelines, regulations and procedures outlining when and how strip searches, visual body cavity searches, and body cavity searches may be performed. It is effective immediately, superseding all previously issued rules, regulations, orders and other directives concerning the procedures to be used when searching prisoners. Officers shall conduct these searches with due recognition and deference for the human dignity of those being searched.

### Sec. 1 GENERAL CONSIDERATIONS/PURPOSE:

The purpose of this Rule is to clarify Department policy relative to custodial strip searches, visual body cavity searches, and/or body cavity searches authorized by a warrant.

A search conducted incident to arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband, and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape (M.G.L. C. 276, s. 1). A search incident to a lawful arrest can progressively extend into a strip search, or visual body cavity search, only if the officer has probable cause to believe that the prisoner has concealed such items on his/her person or his/her clothing that cannot otherwise be discovered by the usual search incident to arrest. Before an officer may command removal of an arrested person's last layer of clothing, he/she must have probable cause to believe that he/she will find a weapon, contraband, or the fruits or instrumentalities of the crime that he/she could not reasonably expect to discover without forcing the arrested person to discard all of his/her clothing. This Rule will provide guidelines for conducting a strip search and/or visual body cavity search.

This Rule also clarifies the Department's policy governing body cavity searches. When an officer has a high degree of probable cause to believe that an arrestee has secreted contraband and/or weapon(s) in any body cavity, that officer must seek a warrant pursuant to G.L. c. 276 to authorize a qualified medical professional to perform a "body cavity search[.]" This requirement must be strictly adhered to even if an object is observed partially protruding from the body cavity. (Note: The exigent circumstances exception to the warrant requirement will apply if a suspect attempts to swallow contraband in the presence of the officer).

*Exhibit ③*

### Sec. 2 DEFINITIONS:

- **Strip Search:** A search that refers to an inspection of a naked individual without any scrutiny of his/her body cavities. It is a search in which a detainee is commanded to remove the last layer of his/her clothing.
- **Visual Body Cavity Search:** A search that extends to a visual inspection of the anal and genital areas. The mouth is not considered a body cavity.
- **Body Cavity Search:** A search conducted pursuant to a warrant that authorizes a physician to conduct an internal manual inspection of any human body cavity.

### Sec. 3 ROLE OF DUTY SUPERVISOR:

It shall be the responsibility of the Duty Supervisor to make the determination whether or not a strip search and/or a visual body cavity search should be conducted. It shall also be the responsibility of the Duty Supervisor to make the determination whether to seek a warrant for a body cavity search.

The Duty Supervisor will ensure that every provision of this Rule is complied with in those cases where a strip search and/or visual body cavity search is to be performed.

### Sec. 4 STRIP SEARCH AND/OR VISUAL BODY CAVITY SEARCH

Strip searches and/or visual body cavity searches <u>MAY NOT</u> be conducted as a routine part of the booking procedure.

A strip search and/or a visual body cavity search may ONLY be conducted if the DUTY SUPERVISOR finds that the suspect is in custody, and the officer has PROBABLE CAUSE to believe that the suspect has a weapon, contraband, or the fruits or instrumentalities of the crime that he could not reasonably expect to discover without forcing the suspect to discard all of his/her clothing.

After such a finding is made, the Duty Supervisor shall ensure that the following procedures are followed:

1. The search will be performed by an officer who is the SAME GENDER as the prisoner, and will be conducted in an area that affords COMPLETE PRIVACY.

2. The strip search and/or visual body cavity search shall be recorded on the incident report. The incident report shall include the facts supporting the probable cause determination, the name of the officer performing the search, and the location where the search is conducted.

3. Any evidence or property discovered shall be seized, recorded and secured in the normal manner, and recorded on the incident report as well as on the booking sheet. If no evidence is found, the reporting officer shall make a notation to that effect on the incident report.

*Exhibit (4)*

4.       Arrestees may be requested to manipulate their own body parts. Police officers may not touch or prod any body part. In the event that the strip search and/or visual body cavity search is not accomplished, due to a lack of cooperation on the part of the arrested person, the Duty Supervisor shall determine whether or not the arrested person is placed in a cell or kept under guard.

Police officers are prohibited from conducting a strip search and/or visual body cavity search outside the confines of the District Station, except in cases of an authorized search warrant for a dwelling, building, or other place that specifies a search of a specific person and/or "any person present." In no event shall force be applied to accomplish a stripsearch and/or visual body cavity search unless authorized by a warrant. If the warrant specifies the search of "any person present" and the superior officer in charge of the search has probable cause to believe that a person present has a weapon, contraband, or the fruits or instrumentalities of the crime that he/she could not reasonably expect to discover without forcing the person present to discard all of his/her clothing, he/she may conduct a strip search and/or visual body cavity search. All responsibilities listed for the Duty Supervisor in this section shall be transferred to the superior officer in charge of the search.

## Sec. 5 BODY CAVITY SEARCH:

Body cavity searches may only be conducted when authorized by a warrant. It shall be the responsibility of the Duty Supervisor to make the determination whether a warrant should be sought authorizing a body cavity search.

NOTE: Precautions should be taken by police officers when handling evidence recovered in this fashion, such as wearing protective gloves.

Body Cavity Search Procedure

1.    Under no circumstances shall a body cavity search be conducted by a police officer.

2.    If an officer has a high degree of probable cause to believe that a weapon, contraband, or the fruits or instrumentalities of the crime may be secreted in a body cavity of the arrested person, a search warrant shall be sought. This applies even when an item may be viewed partially protruding from the body cavity. If the arrested person personally extracts any items from their own body cavity, no such warrant will be necessary

3.    The Duty Supervisor, or his designee, shall make application for the warrant in accordance with established Department procedures (See Special Order 95-5).

4.    Only a judge may issue such a warrant.

5.    Only a qualified medical professional, pursuant to a warrant, may conduct an intrusion of a body cavity, or extract any items from the body cavity. After the warrant is issued, the arrested person shall be transported to a medical facility so that a qualified medical professional may extract any items from the body cavity. The Duty Supervisor shall ensure that the arrested person is constantly monitored during this trip to the medical facility until such time that the body cavity search is completed.

*Exhibit* 

6.     The body cavity search shall be recorded on the incident report, including the name of the physician conducting the search, the name of the officer seizing the evidence or property, the name of the authorizing Duty Supervisor, and the facts contributing to the high degree of probable cause determination. The arrested person shall then be transported back to the station where the evidence or property discovered shall be seized, recorded and secured in the normal manner, and recorded on the incident report as well as on the booking sheet.  If no evidence is found, the reporting officer shall make a notation to that effect on the incident report.

Note: Although not considered a body cavity search, in the event that an arrested person creates an exigent circumstance by endangering his or her own health by swallowing an item, the arrested person shall be immediately transported to a medical facility for treatment. The Duty Supervisor shall ensure that the arrested person is constantly monitored during the trip to the medical facility until such time that the treatment is completed. Any evidence or property recovered by medical personnel shall be seized, recorded and secured in the normal manner, and recorded on the incident report, as well as on the booking sheet. A search warrant is not necessary in those cases where medical personnel perform an operation necessitated by good medical practice, for medical reasons, and only incidentally results in the recovery of evidence for police use.

Kathlee M.O'Toole
Police Commissioner

Page 4 of 4