UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DYER,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, STEWARD HEALTH CARE SYSTEM LLC, CARNEY HOSPITAL, MICHAEL RILEY, ZACHARY CROSSEN, THUAN LAI, WALTER J. RAMOS,<br><br>    Defendants. | No. 17-cv-11452-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                                                                                                     March 27, 2018

### I.     Introduction

Plaintiff Joseph Dyer ("Dyer") has filed this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act against the City of Boston, Steward Health Care System LLC ("Steward Health"), Carney Hospital, Dr. Michael Riley ("Dr. Riley"), Zachary Crossen ("Crossen"), Thuan Lai ("Lai") and Walter J. Ramos ("Ramos") (collectively, the "Defendants"). D. 1-1. Dyer alleges that the Defendants violated his Fourth Amendment rights under the United States Constitution, the Massachusetts Constitution and Massachusetts Civil Rights Act ("MCRA"), committed medical malpractice and violated Mass. Gen. L. c. 258. D. 1-1 at 7. He seeks monetary relief from all Defendants. D. 1-1 at 18. The City of Boston, Crossen and Lai (collectively, "City Defendants") now move for dismissal, D. 3, as do Steward, Carney Hospital, Ramos and Riley (collectively, "Healthcare Defendants"), D. 14. Dyer also moves to withdraw his medical malpractice claims. D. 16. For the reasons set forth below, the Court ALLOWS IN

PART and DENIES IN PART both motions to dismiss, D. 3; D. 14. The Court ALLOWS Dyer's motion to withdraw his medical malpractice claims, D. 16.

## II. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must distinguish between "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). "[N]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14-15 (1st Cir. 2011)). The plaintiff must show that the combined allegations state "a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). That said, a *pro se* complaint survives the motion to dismiss stage only if it "set[s] forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

## III. Factual Background

The following factual summary is based upon the allegations in Dyer's complaint and attached exhibits, D. 1-1, which are accepted as true for the consideration of Defendants' motions to dismiss.

On May 13, 2015, Dyer, an inmate at Donald W. Wyatt Detention Center, was arrested for drug possession. D. 1-1 ¶ 1; D. 1-1 at 19. After a "physical altercation," Dyer "began having chest pains." D. 1-1 ¶ 2. Emergency medical technicians instructed police officers Crossen and Lai to escort Dyer to Carney Hospital. D. 1-1 ¶ 4. In the ambulance, Crossen told Dyer that he believed Dyer had drugs hidden in his rectum, and "that 'he' was going to give [Dyer] a rectal exam." D. 1-1 ¶¶ 5-6.

When they arrived at Carney Hospital, Crossen told Dyer he would order a doctor to conduct an anal cavity search. D. 1-1 ¶ 7. Crossen instructed hospital staff to place Dyer on a gurney face-down, and Crossen and Lai handcuffed Riley to the bottom of the gurney. D. 1-1 ¶¶ 7-8. Crossen and Lai then removed Riley's clothes. D. 1-1 ¶ 9. Crossen then allegedly "slapped" Riley's bare buttocks and made offensive remarks referring to Dyer as his "bitch," at which point Riley screamed for help. D. 1-1 ¶¶ 10-11. Crossen then digitally penetrated Dyer's rectum. D. 1-1 ¶ 11. Dyer continued screaming for help. D. 1-1 ¶ 12.

Dr. Riley entered the room and saw Crossen removing his fingers from Dyer. D. 1-1 ¶ 14. Dr. Riley then left the room with Crossen and Lai. D. 1-1 ¶ 15. Outside, Crossen and Lai informed Dr. Riley that Dyer had "a history of packing drugs, hypodermic needles and other weapons in his rectum." D. 1-1 at 21 (internal quotation marks omitted). When they returned, Dr. Riley explained that Crossen and Lai told him that Dyer "got caught with drugs in [his] buttocks today" and that the officers had asked Dr. Riley to perform a rectal exam on Dyer. D. 1-1 ¶¶ 16-17. Dr. Riley

asked Dyer if he had drugs in his rectum, and Dyer denied having any drugs. D. 1-1 ¶ 23. Dr. Riley asked Dyer to consent to an anal cavity search, but Dyer refused. D. 1-1 ¶ 24. Dr. Riley then "drugged or sedated" Dyer, told Lai and Crossen to hold Dyer down as Dyer continued to protest, and inserted two fingers into Dyer's rectum. D. 1-1 ¶¶ 25-32; D. 1-1 at 21. Nurses, hearing Dyer, occasionally "yell[ed] and open[ed] the curtain" to keep Dyer quiet. D. 1-1 ¶ 33. Dr. Riley then took an x-ray of Dyer's pelvis. D. 1-1 ¶ 38.

As alleged in the complaint, Boston Police Department rules state that "[b]ody cavity searches may only be conducted when authorized by a warrant." D. 1-1 at 25 (attaching an excerpt from Boston Police Department Rules and Procedures). A body cavity search, or an "internal manual inspection of any human body cavity," may not be conducted by a police officer. D. 1-1 at 24-25. Rather, only a qualified medical professional—subsequent to a Duty Supervisor's application for a warrant, issued by a judge—may conduct a body cavity search. D. 1-1 at 25. The search must then be recorded on an incident report. D. 1-1 at 26.

Neither the officers nor Dr. Riley possessed a warrant to conduct an anal cavity search, D. 1-1 ¶¶ 18-20, and Dyer did not consent to the x-ray or Dr. Riley's communication of Dyer's x-ray results to Lai and Crossen, D. 1-1 ¶ 39. Lai and Crossen did not indicate on Dyer's incident report that they or Dr. Riley performed an anal cavity search. D. 1-1 ¶ 43. Dyer alleges that the Boston Police Department has a "custom," of which the Police Commissioner is aware, whereby officers bring arrested persons to hospitals and explain that the arrestee "swallowed something," compelling doctors to conduct warrantless searches and x-rays. D. 1-1 ¶¶ 40-41.

## IV. Procedural History

Riley instituted this action in Suffolk Superior Court on May 16, 2017. D. 1. Defendants subsequently removed the case to this Court on August 7, 2017. Id. The City Defendants have

4

now filed their motion to dismiss, D. 3, and the Healthcare Defendants have also moved to dismiss, D. 14.

## V. Discussion

Dyer has not alleged distinct, enumerated counts in his amended complaint, but has rather stated them in his opening paragraphs, asserting the following claims: violations of 42 U.S.C. § 1983 ("§ 1983"), on the basis of an unlawful body cavity search, in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution and Article 14 of the Massachusetts Constitution; medical negligence; and Mass. Gen. L. c. 258. D. 1-1 at 8-10. After the Healthcare Defendants moved to stay discovery pending review by a medical malpractice tribunal, D. 15, Dyer moved to withdraw his claims of medical negligence and malpractice. D. 16.

### A. **City Defendants**

#### 1. *Dyer Has Stated a Claim against Officers Crossen and Lai*

##### a) Qualified Immunity

City Defendants argue that Crossen and Lai are insulated from liability by qualified immunity. D. 4 at 7-12. To determine whether a defendant is entitled to qualified immunity, courts assess first "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right" and second, "whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)); see Mosher v. Nelson, 589 F.3d 488, 492 (1st Cir. 2009). Dyer alleges that Crossen and Lai's nonconsensual body cavity search violated his Fourth Amendment rights. D. 1-1 ¶¶ 18-22. City Defendants argue that "the right to be free from a warrantless manual body cavity search incident to a valid arrest for drug possession was not clearly established at the time of Plaintiff's arrest." D. 4 at 7.

To determine if the right was clearly established at the time of the incident, the Court must consider whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mosher, 589 F.3d at 493 (quoting Maldonado, 568 F.3d at 269) (internal quotation marks omitted). "[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Maldonado, 568 F.3d at 269.

The Fourth Amendment generally "prohibits only those searches that are unreasonable," requiring a court to "consider whether the circumstances and the public's need for information justify the particular intrusion into the searched individual's privacy." Spencer v. Roche, 659 F.3d 142, 146 (1st Cir. 2011), cert. denied, 566 U.S. 921 (2012). Nonconsensual "intrusion[s] into the body," however, require a "particularly robust justification." Id. "[I]n determining the reasonableness of an intrusion into a suspect's bodily integrity, a court must consider the strength of the suspicion driving the search, the potential harm to the suspect's health and dignity posed by the search, and the prosecution's need for the evidence sought," and may also consider "the availability vel non of a less invasive means of conducting the search." Id. at 147. Manual rectal examinations pose a particular harm to an individual; the First Circuit has described such searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." Rodriques v. Furtado, 950 F.2d 805, 810 (1st Cir. 1991) (quoting Blackburn v. Snow, 771 F.2d 556, 564 (1st Cir. 1985)) (internal quotation marks omitted).

City Defendants contend that it was not clearly established that a manual body cavity search incident to a lawful arrest for drug possession required a warrant under the Fourth Amendment. D. 4 at 9. They argue that "the precise justification required to search an individual

6

in the context of a lawful arrest has been an elusive matter," D. 4 at 9-10, pointing to Spencer v. Roche, in which the district court expressed that the level of suspicion required was "unclear," Spencer, 755 F. Supp. 2d 250, 266 (D. Mass. 2010). In Spencer, however, the district court was addressing visual cavity searches, id., which are fundamentally different from manual body cavity searches. See Bonitz v. Fair, 804 F.2d 164, 172 (1st Cir. 1986) (explaining that the distinction between manual and visual body cavity searches "is significant and has been noted by the courts"); Blackburn, 771 F.2d at 561 n.3, 564; Fate v. Charles, 24 F. Supp. 3d 337, 344 (S.D.N.Y. 2014) (explaining that a "manual body cavity search" is "the most invasive type of search, which crosses from a visual to a manual inspection of the subject's body cavity"). Moreover, on appeal, the First Circuit stated that it "ha[s] upheld digital searches of a vagina and rectum when supported by probable cause and appropriately carried out by medical professionals." Spencer, 659 F.3d at 147; see Sanchez, 590 F.3d at 44 (concluding that the rectal searches "carried out by medical professionals" in a hospital "upon suspicion that plaintiff had contraband in his rectum, and with no abusive or humiliating conduct on the part of the law enforcement officers or the doctors, were not unreasonable"); Rodriques, 950 F.2d at 810 (explaining that "[t]he First Circuit has expressed its revulsion for body cavity searches not supported by probable cause"). Regardless of whether a warrant was constitutionally required, then, it was clearly established by the time Crossen and Lai conducted this alleged nonconsensual manual rectal search that at least probable cause was required. City Defendants have not suggested that the officers had probable cause to conduct or attempt to conduct a manual body cavity search, nor have they provided a "particularly robust" justification for the search here.

Even if City Defendants did have probable cause to conduct such an invasive search, however, Dyer has plausibly alleged that the manner in which the search was conducted was

7

unreasonable. The "severe intrusion" of a manual body cavity search may be "exacerbated by the manner in which the search[] [was] carried out," such as when the search was "undertaken by personnel who received no training, medical or otherwise" to conduct the search. Blackburn, 771 F.2d at 565 n.5. In Rodriques, the First Circuit held that a manual body cavity search, authorized by a search warrant and conducted by a physician in a hospital, was reasonable, emphasizing that "[a]t least where there are no exigent circumstances present, the severity of the personal intrusion manifested by these searches would indicate that they be conducted by a doctor in a private and hygienic setting and in a medically approved manner." Rodriques, 950 F.2d at 811. The First Circuit stressed the importance of medical professional involvement in manual body cavity searches decades ago, and it has repeatedly underscored the point in the years since. See Spencer, 659 F.3d at 147; Sanchez, 590 F.3d at 44. Moreover, an otherwise reasonable body cavity search may become unreasonable, and, thus, unconstitutional, if it was "conducted in an abusive fashion." Bonitz, 804 F.2d at 171; see Sanchez, 590 F.3d at 43. As alleged, the search was conducted by two officers with no apparent medical training and involved behavior before, during and after the search that compounded on the humiliation and indignity of the search itself. Cf. Sanchez, 590 F.3d at 44. The Court thus denies City Defendants' motion to dismiss Dyer's § 1983 claims against Defendants Crossen and Lai on the basis of qualified immunity.

City Defendants address Dyer's MCRA claim in conjunction with the § 1983 claim because the MCRA is held to the same standard of immunity as §1983 claims. D. 4 at 12; see Rodriques v. Furtado, 410 Mass. 878, 882 (1991) (explaining that the MCRA "intended to adopt the standard of immunity for public officials developed under 42 U.S.C. 1983"). Massachusetts law "in some instances provide[s] a broader prophylaxis than the Fourth Amendment." Spencer, 659 F.3d at 149 (citing Commonwealth v. Cruz, 459 Mass. 459, 466 n.10 (2011)). Massachusetts law requires

8

probable cause to support visual body cavity searches, Commonwealth v. Prophete, 443 Mass. 548, 553 (2005), and manual body cavity searches require a "strong showing of particularized need supported by a high degree of probable cause," Rodriques, 410 Mass. at 888. As with the Fourth Amendment inquiry, Massachusetts courts also analyze the reasonableness of the search itself. Prophete, 443 Mass. at 554. Having held that Dyer plausibly alleges a Fourth Amendment violation here, and not one barred by qualified immunity, the Court also declines to dismiss Dyer's MCRA claim as to these Defendants.[1]

        b)        Service of Process

City Defendants also argue that Dyer's claims should be dismissed under Fed. R. Civ. P. 12(b)(4) as to Defendants Crossen and Lai due to insufficient process. D. 3; D. 4 at 12-13. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied." Aly v. Mohegan Council-Boy Scouts of Am., No. 08-cv-40099-FDS, 2009 U.S. Dist. LEXIS 97254, at *2, 2009 WL 3299951 (D. Mass. Apr. 20, 2009) (citing Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)).

City Defendants argue here that "each Officer was served at his place of employment," which is "impermissible under either Federal or State law." D. 4 at 13. City Defendants move to dismiss the complaint under Rule 12(b)(4). D. 3. Their arguments, however, pertain only to a Rule 12(b)(5) motion. "Rule 12(b)(4) attacks the form of process, that is, the content of the

---

[1] City Defendants address Dyer's tort claims in a footnote, arguing that because the Officers' search was objectively reasonable, his tort claims have no merit. D. 4 at 12 n.8. Dyer's complaint does not explicitly allege any tort claims, but only references the Massachusetts Torts Claims Act, Mass. Gen. L. c. 258, and states that the "Officer . . . conspired, intimidate[d], sexually assaulted" him. D. 1-1 at 8. He lists "assault and battery through rape," "prima facie tort," "intentional infliction of emotional distress" and "intentional tort to cause harm" in his motion papers, D. 19 at 10, but these claims are not sufficiently pled in his complaint and the Court, therefore, does not address them here.

9

summons, whereas Rule 12(b)(5) challenged the mode of the delivery of the process, or the lack of delivery of the summons and the complaint." Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 472 (D. Mass. 2017). City Defendants have not identified anything deficient about the summons issued in this case. Accordingly, their motion to dismiss under Rule 12(b)(4) is denied. Cf. Langadinos v. Bd. of Trs. of the Univ. of Mass., No. 12-11159-GAO, 2013 U.S. Dist. LEXIS 140767, at *18-19, 2013 WL 5507042, at *6 (D. Mass. Aug. 29, 2013).

Even entertaining City Defendants' argument as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5), the Court declines to dismiss on this basis. Under Fed. R. Civ. P. 4(e), an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or delivering a copy to an agent of the individual. Fed. R. Civ. P. 4(e). Service is also proper if compliant with state law, which, here, tracks federal law. Id.; see Mass. R. Civ. P. 4(d). "Notably, neither the federal rules nor the Massachusetts rules permit service upon an individual by *certified mail* at her *place of employment*." Mukherjee v. Anderson, No. 12-11381-FDS, 2013 U.S. Dist. LEXIS 73843, at *7, 2013 WL 2299521, *3 (D. Mass. May 24, 2013) (emphasis in original). Dyer's service of Defendants Crossen and Lai by certified mail at their place of employment is, therefore, deficient service of process.

Dyer is proceeding *pro se* and is incarcerated, but Defendants argue that he is still responsible for effecting proper service. D. 4 at 13; see Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (explaining that "pro se status does not insulate a party from complying with procedural and substantive law"). A plaintiff's *pro se* status, however, may be considered as part of a showing of good cause for an extension of time for service of process when a plaintiff has

10

failed to properly serve. See McIsaac v. Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002). Here, Dyer is *pro se* and incarcerated, and Defendants Crossen and Lai received actual notice of Dyer's claims, evidenced by their removal of this case to federal court and filing of this motion, as well as the mail receipts attached to that motion. D. 1; D. 3; D. 4 at 16-21. There is no indication that Dyer acted in bad faith or purposefully in his noncompliance. All of these factors weigh in favor of providing Dyer with an extension of time to effectuate proper service of process to Defendants Crossen and Lai. See Awadh v. Tourneau, Inc., No. 15-cv-13993, 2017 U.S. Dist. LEXIS 24704, at *9-10, 2017 WL 1246326, *4 (D. Mass. Feb. 17, 2017). The Court thus denies City Defendants' motion to dismiss for improper service and awards Dyer 45 days from the date of this order to provide proper service of process.

    2.    *Dyer Fails to State a Claim against the City of Boston*

        a)    Liability Under § 1983

Dyer argues that the city of Boston is liable for the actions of Officers Crossen and Lai under the Fourth Amendment and § 1983. D. 1-1 ¶¶ 40-42. Section 1983 liability cannot be established by a *respondeat superior* theory. See, e.g., Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011); Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009); Iqbal, 556 U.S. at 676 (stating that "vicarious liability is inapplicable to . . . § 1983 suits"). Where, as here, a plaintiff plausibly alleges a constitutional violation, a municipality may be liable "only if the violation occurs pursuant to an official policy or custom." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978)). To establish municipality liability, a plaintiff must also demonstrate "1) that the municipal policy or custom actually [] caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). Deliberate indifference "will be found only if

11

it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008). "The Supreme Court . . . has set a very high bar for assessing municipal liability under Monell." Young, 404 F.3d at 26.

Dyer alleges here that the city is liable because it has a custom of bringing arrested persons to hospitals to compel doctors to conduct warrantless searches and x-rays and because the Officers' actions were the product of the city's failure to discipline or train. D. 1-1 ¶¶ 40-42. Dyer thus alleges two theories of municipality liability, both of which the City Defendants argue are insufficient to state a § 1983 claim here. D. 4 at 4-5.

First, the City Defendants argue that Dyer's factual allegations regarding the Boston Police Department's practices at hospitals do not suggest plausibly the existence of a policy or custom. Id. "[A] single instance of misconduct" does not amount to a custom or policy for municipal liability purposes unless the act or decision was made by an official with "final policymaking authority." Welch, 542 F.3d at 942. City Defendants argue that Dyer's complaint consists of a single incident alone, with "no facts suggesting that either named police officer played a policymaking role" and no alleged incidents of similar misconduct or facts from which the City's knowledge of such a custom may be inferred.[2] D. 4 at 5. Dyer argues that "[t]he assault in this case is not an isolated example" of this behavior, D. 25 at 7, but Dyer has not alleged any facts to support this contention. Given that his present allegations, Dyer has not plausibly alleged a

---

[2] City Defendants also argue that the excerpt from the Boston Police Department's Rules and Procedures manual, attached to and incorporated into Dyer's complaint, "undercuts Plaintiff's assertion that the City has a custom of forcing medical professionals to perform improper body cavity searches," D. 4 at 5 n.2, where the manual provides, among other things, that "[b]ody cavity searches may only be conducted when authorized by a warrant" and that "[u]nder no circumstances shall a body cavity search be conducted by a police officer." D. 1-1 at 25.

municipal custom or policy on this basis. See Luthy v. Proulx, 464 F. Supp. 2d 69, 74 (D. Mass. 2006).

Second, the City Defendants argue that Dyer's allegations regarding failure to train are also insufficient. D. 4 at 4-5. "[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Young, 404 F.3d at 27. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011). Dyer alleges that the "Police Commissioner of Boston Police had knowledge" of the practice of officers bringing suspects to hospitals to conduct nonconsensual searches. D. 1-1 ¶ 41. Dyer points to Humphrey v. Comoletti, No. 1:15-cv-14170-ADB, 2017 U.S. Dist. LEXIS 50465, 2017 WL 1224539, at *10 (D. Mass. Mar. 31, 2017), to argue that his allegations are sufficient. D. 25 at 7-8. In Humphrey, the court held that the plaintiffs had plausibly alleged the existence of a policy or custom of failure to train, supervise and discipline officers where the plaintiffs had alleged two incidents of excessive force perpetrated by the same officer within a five year period, also providing a news article suggesting additional incidents. Humphrey, 2017 U.S. Dist. LEXIS 50465, at *31-32 (noting that the supporting facts "very thinly but plausibly suggest the City's deliberate indifference to the fact that their policies or customs may lead to constitutional violations"). Multiple instances of misconduct, especially when perpetrated by the same department or even individual officer, may, therefore, demonstrate a failure to train or discipline. See id.; Bochart v. City of Lowell, 989 F. Supp. 2d 151, 155 (D. Mass. 2011) (denying motion to dismiss where the complaint cited six reports of alleged excessive

force, three of improper use of pepper spray, and three of denial of medical treatment, two instances of which occurred within two months of the events at issue). Here, however, Dyer has not alleged any specific incidents beyond the one at issue involving these or any other officers in the Boston Police Department demonstrating a failure to train or discipline. See Miller v. City of Bos., 586 F. Supp. 2d 5, 8 (D. Mass. 2008) (allowing motion to dismiss where plaintiff's allegations included "an apparently isolated incident" and did not identify an official policy causing the violation).

Although "[p]ro se complaints are accorded an 'extra degree of solicitude . . .' even a pro se plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Stevenson v. Amazon.com, Inc., No. 15-cv-13505-FDS, 2016 U.S. Dist. LEXIS 63537, at *3, 2016 WL 2851316, at *3 (D. Mass. May 13, 2016) (quoting Wright v. Town of Southbridge, No. 07-cv-40305-FDS, 2009 U.S. Dist. LEXIS 12817, at *6-7, 2009 WL 415506 (D. Mass. Jan. 15, 2009)). Dyer has provided no factual allegations to support a custom or policy claim against the City of Boston on this basis.

    b)  Liability Under the MCRA

To the extent that Dyer alleges a claim against the City of Boston under the MCRA for violation of his constitutional rights, those claims must also be dismissed. See D. 1-1 at 7 (suggesting claim based on Mass. Gen. L. c. 12, §§11H-11I); D. 20 at 66. The MCRA provides individuals a cause of action against "any person or persons" that interfere with an individual's state or federal constitutional rights. Mass. Gen. L. c. 12 §11H. Massachusetts courts hold that, unlike under § 1983, a "municipality is not a 'person' covered by the Massachusetts Civil Rights Act." Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-92 (2001). Courts in this Circuit

have, therefore, dismissed MCRA claims brought against municipalities. See Spencer v. City of Bos., No. 15-cv-10634-IT, 2017 U.S. Dist. LEXIS 44426, at *5, 2017 WL 1147449, at *2 (D. Mass. Mar. 27, 2017); Saldivar v. Pridgen, 91 F. Supp. 3d 134, 139 (D. Mass. 2015); Kelley v. LaForce, 288 F.3d 1, 14 n.9 (1st Cir. 2002). Accordingly, to the extent Dyer has alleged MCRA claims against the City of Boston, such claims are dismissed.

### B. Healthcare Defendants

The Healthcare Defendants have also moved to dismiss Dyer's complaint. D. 14. Dyer's claims against these Defendants include federal and state constitutional claims, as well as "medical negligence," or malpractice. D. 1-1 at 8. Healthcare Defendants moved to stay discovery pending resolution of this motion or, if the motion to dismiss is denied, until the medical malpractice tribunal convenes and issues its findings.[3] D. 15. Dyer then moved to withdraw his malpractice claims. D. 16. Healthcare Defendants opposed Dyer's motion, arguing that Dyer's claims against them "stem solely from the medical treatment provided to the Plaintiff at Carney Hospital" and, thus, "are subject to the malpractice tribunal requirement of G.L. c. 231 §60B." D. 21 at 1.

Healthcare Defendants are incorrect. While Dyer alleges some claims based on his medical treatment, Dyer's core allegations are constitutional: Dyer's assertion that his Fourth Amendment rights were violated with nonconsensual body cavity searches exists apart from any malpractice claims. Whether Dr. Riley acted as a state actor when conducting the alleged nonconsensual body cavity searches, thus stating a plausible constitutional claim, see Rodriques, 950 F.2d at 814, does not hinge on Dr. Riley's adherence to medical standards, but rather, to the standards of the Constitution. Healthcare Defendants' liability, therefore, remains a question for this Court, and not the malpractice tribunal. The Court thus ALLOWS Dyer's motion to withdraw his medical

---

[3] This Court granted the stay pending resolution of the motions to dismiss only. D. 26.

malpractice and negligence claims, D. 16, and thus reviews Healthcare Defendants' motion to dismiss only as it pertains to the surviving claims.[4]

### 1. Dyer Fails to State a Claim against Defendants Steward Health, Carney Hospital and Ramos

Healthcare Defendants seek dismissal of Dyer's claims as to Defendants Carney Hospital, Steward Health and Ramos because Dyer asserts no factual allegations against these Defendants in his complaint. D. 14 at 2. In his complaint, Dyer explains that Ramos is the president of Carney Hospital, which is owned and operated by Steward Health. D. 1-1 at 7. He alleges that Ramos "is responsible for the daily running, training, security, [and] overall teaching of constitutionally secured rights to all" hospital staff. Id.

Dyer has provided no factual allegations against these three Healthcare Defendants, and, thus, cannot state a claim upon which relief can be granted. As explained, Defendants cannot be held liable under § 1983 on a theory of vicarious liability. See, e.g., Leavitt, 645 F.3d at 502. Lacking any factual allegations establishing their own liability, Dyer has failed to state a claim against them. These claims are thus dismissed in their entirety.

### 2. Dyer Has Stated Plausible Claims against Dr. Riley

Dyer alleges that Dr. Riley sedated him, performed a nonconsensual body cavity search, and took an x-ray of Dyer's pelvis without his consent. D. 1-1 ¶¶ 25-32, 38. Healthcare Defendants argue that Dyer's claims against Dr. Riley should be dismissed on the basis of "judicial estoppel." D. 14 at 4. They contend that Dyer's allegations are contrary to his recitation of the facts submitted with his suppression motion in his criminal case, filed in this District. Id. Thus, federal law applies. Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers

---

[4] The Court understands the remaining claims asserted against Healthcare Defendants as the federal and state constitutional claims.

Corp.), 324 F.3d 12, 16 (1st Cir. 2003). The Court may consider Healthcare Defendants' estoppel defense on a motion to dismiss "if: (1) 'the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice,' and (2) 'the facts so gleaned [] conclusively establish the affirmative defense.'" Sentient Jet, LLC v. Apollo Jets, LLC, No. 13-cv-10081, 2014 U.S. Dist. LEXIS 34038, at *22, 2014 WL 1004112, at *7 (D. Mass. Mar. 17, 2014) (quoting Colonial, 324 F.3d at 16) (alterations in original). The Court may consider Dyer's suppression motion attached to Healthcare Defendants' motion to dismiss, D. 14-2, as a document that is a "public record[]," "the authenticity of which [is] not disputed by the parties." Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993); see Afrasiabia v. Awad, No. 14-10239-PBS, 2015 U.S. Dist. LEXIS 132092, at *6 (D. Mass. Sep. 14, 2015) (explaining that "a court may take judicial notice of complaints filed in related cases"); Fed. R. Civ. P. 12(d).

Dyer is not judicially estopped by his criminal suppression motion. "[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." United States v. Szpyt, 785 F.3d 31, 41 (1st Cir. 2015) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)) (internal quotation marks omitted). The doctrine is "equitable and thus cannot be reduced to a precise formula or test." Zedner v. United States, 547 U.S. 489, 504 (2006). The Court considers the following factors when analyzing a judicial estoppel claim: whether (1) "a party's later position . . . [is] clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." United States v.

17

Pakala, 568 F.3d 47, 59 (1st Cir. 2009) (quoting Zedner, 547 U.S. at 504) (internal quotation marks omitted). Here, the first two factors weigh against dismissing on this basis.

First, as a factual matter, Dyer's current allegations are not clearly inconsistent with his factual statements in his suppression motion. In Dyer's criminal suppression motion, Dyer stated that he was sedated and the doctor performed an x-ray and a visual body cavity search. D. 14-2 at 4. He explained that Dr. Riley "attempted to perform a full manual rectal exam, but Mr. Dyer refused to consent to such a procedure." Id. His affidavit submitted in support of that motion does not mention any interaction with Dr. Riley. D. 14-2 at 27-28. The point of contrast, therefore, is whether Dr. Riley indeed performed a nonconsensual manual body cavity search. Even if this point were removed, however, the complaint could plausibly allege a nonconsensual visual body cavity search and x-ray examination, both of which must still be "reasonable" to pass constitutional muster. See Spencer, 659 F.3d at 147-48; United States v. Barnes, 506 F.3d 58, 62 (1st Cir. 2007)

Second, Dyer has not succeeded in persuading a court to accept his earlier position. "The party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation." Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010); see Gens v. Resolution Trust Corp., 112 F.3d 569, 572 (1st Cir. 1997). Indeed, the First Circuit has stated that "[t]he showing of judicial acceptance must be a strong one." Perry, 629 F.3d at 11. Applying the doctrine with caution "avoid[s] impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." Id. (quoting Teledyn Indus., Inc. v. NLRB, 911 F.3d 1214, 1218 (6th Cir. 1990)) (internal quotation marks omitted). Dyer filed his suppression motion on August 31, 2016, No. 1;15-cr-10248-RGS-3, ECF No. 69, but the court never decided the motion because he withdrew the motion in November 2016 to "facilitate ongoing plea negotiations," id., ECF no. 89. Dyer's

18

prior factual representations appear to have never been accepted by the court in his criminal case, and cannot serve, therefore, to judicially estop his factual allegations here.

For these reasons, the Court declines to dismiss Dyer's claims against Dr. Riley.

## VI.  Conclusion

For the foregoing reasons, the City Defendants' motion to dismiss, D. 3, is ALLOWED IN PART and DENIED IN PART.  Dyer's claims against the City of Boston are DISMISSED, but all claims survive as to Defendants Crossen and Lai.  Dyer must, however, properly serve Crossen and Lai within forty-five (45) days of this opinion.  Healthcare Defendants' motion to dismiss, D. 14, is ALLOWED IN PART and DENIED IN PART.  Dyer's claims against Steward Health, Carney Hospital and Ramos are DISMISSED, but his constitutional claims against Dr. Riley will move forward.  Dyer's motion to withdraw his malpractice claims, D. 16, is ALLOWED, and those claims are DISMISSED as to all Defendants.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge