IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DYER,<br><br>    *Plaintiff*,<br><br>v.<br><br>STEWARD CARNEY HOSPITAL, INC;<br>STEWARD HEALTH CARE SYSTEM, LLC;<br>MICHAEL REILY, M.D.; ZACHARY<br>CROSSEN; and THUAN LAI;<br><br>    *Defendants*. | No. 17-cv-11452-DJC<br><br>Leave to File Granted:<br>12/14/2018 |

## FIRST AMENDED COMPLAINT

### Introduction

1. On May 13, 2015, Plaintiff Joseph Dyer ("Mr. Dyer") suffered a medical emergency during an arrest for suspected involvement in a drug transaction, and he was taken to a nearby hospital by ambulance with a police escort. But instead of receiving medical treatment for his chest pains, Mr. Dyer was raped twice, forcibly medicated, and subjected to other humiliation and degradation, all at the hands of the Defendants.

2. After Mr. Dyer arrived at Defendant Steward Carney Hospital, Defendant Officer Zachary Crossen and Defendant Officer Thuan Lai, both of the Boston Police Department ("BPD"), handcuffed him face down on a gurney. While nurses, security guards, and other hospital personnel ignored Mr. Dyer's screams for

1

help, Crossen and Lai stripped him naked, slapped, insulted, degraded, humiliated, and digitally raped him. Defendant Michael Reily, M.D. then drugged Mr. Dyer, digitally raped him for a second time, and x-rayed his abdomen and pelvis.

3. Despite the repeated, extensive, and tortuous invasions of Mr. Dyer's body, all in violation of his constitutional rights, no drugs or contraband were found, and after his harrowing ordeal, Mr. Dyer was transported from the hospital to the police station.

4. By this civil action, Mr. Dyer seeks compensatory and punitive damages pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, and pursuant to Massachusetts common law, for negligent and intentional infliction of emotional distress, assault and battery, indecent assault and battery, rape, administration of a drug to enable rape, and negligence.

5. Mr. Dyer alleges all facts in this complaint on his personal knowledge or information and belief.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the federal claims concerning violations of the Fourth, Fifth, and Fourteenth Amendment to the U.S. Constitution. This Court also has pendent jurisdiction under 28 U.S.C. § 1367 over the related claims pursuant to state law.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391, because the events giving rise to this civil action occurred in this judicial district.

8. This Court has personal jurisdiction over all Defendants because they are either employed by the City of Boston, a municipality within the Commonwealth of Massachusetts, or reside within the Commonwealth of Massachusetts.

## PARTIES

9. Defendant Thuan Lai is a BPD officer. At all relevant times, Lai was acting under the color of state law and in the course and scope of his employment by the City of Boston.

10. Defendant Zachary Crossen is a BPD officer. At all relevant times, Crossen was acting under the color of state law and in the course and scope of his employment by the City of Boston.

11. Defendant Steward Carney Hospital, Inc. ("Steward Carney Hospital") is a hospital in Boston, Massachusetts, operated and managed by Steward Health Care System, LLC.

12. Defendant Steward Health Care System, LLC ("SHCS") is the largest private, for-profit hospital operator in the United States, and it is headquartered in Boston. SHCS owns and operates multiple hospitals and healthcare provider entities.

13. Defendant Michael Reily, M.D. is a physician employed by Steward Carney Hospital and SHCS (collectively, the "Steward Defendants"). At all relevant times, Reily acted under the color of state law at the direction of Officers Lai and Crossen and to aid them as law enforcement officers, and/or acted as an employee, agent, or servant of the Steward Defendants.

**FACTS**

14. On May 13, 2015, Mr. Dyer was arrested for suspected participation in a drug transaction.

15. Mr. Dyer began suffering chest pains, and the arresting officers called for an ambulance.

16. A call went out over the radio for an "officer in need of assistance," and multiple officers and vehicles arrived on the scene, to the point where the street was full of police cars.

17. Crossen and Lai responded to a BDP radio call for "an officer in need of assistance," and emergency medical technicians ("EMTs") from Boston EMS also arrived in an ambulance.

18. Crossen and Lai were instructed to escort the EMTs and Mr. Dyer to Steward Carney Hospital.

19. Crossen rode in the ambulance with the EMTs and Mr. Dyer. Lai followed in a police vehicle.

20. In the ambulance, Crossen told Mr. Dyer that he believed Mr. Dyer had drugs hidden in his rectum and that he was going to perform an anal cavity search.

21. When they arrived at Steward Carney Hospital, Crossen told Mr. Dyer he would order a doctor to conduct an anal cavity search

22. Crossen and Lai instructed hospital staff to place Mr. Dyer face-down on a gurney, and Crossen and Lai then handcuffed Mr. Dyer to the bottom of the gurney.

23. While Mr. Dyer was handcuffed to the gurney, Crossen and Lai removed his clothes.

24. Crossen slapped Mr. Dyer's bare buttocks and made offensive remarks referring to Dyer as his "bitch," at which point Mr. Dyer screamed for help.

25. Without a warrant to conduct a body cavity search, Crossen then digitally penetrated Mr. Dyer's anus and rectum, while Mr. Dyer continued screaming for help.

26. Reily was working in the Emergency Department of Steward Carney Hospital, and at the direction and for the benefit of the Steward Defendants, Reily was responsible for treating Mr. Dyer.

27. When Reily entered the room where Mr. Dyer was located, he saw Crossen removing his fingers from Mr. Dyer and said, "what are you doing?"

28. Reily then left the room with Crossen and Lai. Crossen and Lai falsely informed Reily that Mr. Dyer had a history of packing contraband into his rectum and asked that Reily do whatever was necessary to ensure that Mr. Dyer had not packed anything in his rectum on this occasion.

29. Crossen, Lai, and Reily returned to the room where Mr. Dyer was located. Reily falsely told Mr. Dyer that Crossen and Lai had informed him that Mr. Dyer "got caught with drugs in his buttocks today" and that the officers had asked him to perform a rectal exam on Mr. Dyer.

30. Reily asked Mr. Dyer if he had drugs in his rectum, and Mr. Dyer told him that he did not.

31. Reily then asked Mr. Dyer to consent to an anal cavity search, but Mr. Dyer refused.

32. Without Mr. Dyer's consent and over his objection, and while Crossen and Lai held Mr. Dyer down on the gurney, Reily forcibly administered doses of Haldol and Ativan to sedate Mr. Dyer so that he could conduct an anal cavity search of Mr. Dyer.

33. Without a warrant to conduct a body cavity search, Reily inserted two fingers into Mr. Dyer's anus and rectum, and Mr. Dyer continued to protest loudly.

34. Nurses, security guards, and other hospital personnel occasionally came in to the room and requested that Crossen, Lai, and Reily keep Mr. Dyer quiet. But these unidentified employees of the Steward Defendants did nothing to assist Mr. Dyer.

35. Without Mr. Dyer's consent, Reily ordered and obtained x-rays of Mr. Dyer's abdomen and pelvis.

36. The x-rays revealed that Mr. Dyer had not secreted any drugs or contraband in his body. Reily communicated this to fact to Crossen and Lai, who then transported Mr. Dyer from the hospital to the precinct for booking.

37. BPD policies and procedures state that body cavity searches may only be conducted when authorized by a warrant.

38. Under BPD policies and procedures, a body cavity search, or an "internal manual inspection of any human body cavity," may not be conducted by a police officer. Rather, only a qualified medical professional may conduct a body cavity

search, and only after a valid search warrant has been issued and signed by a judge. The search must then be recorded on an incident report.

39. None of the Defendants applied for or obtained a warrant to conduct an anal cavity search of Mr. Dyer, and he did not consent to such a search.

40. Mr. Dyer also did not consent to any administration of medication, the taking of any x-rays, or Reily's disclosure of Mr. Dyer's x-ray results to Lai and Crossen.

41. Lai and Crossen did not disclose on Mr. Dyer's incident report that they or Reily performed an anal cavity search.

42. Defendants, intentionally and/or recklessly, assaulted and humiliated Mr. Dyer by orchestrating and causing multiple invasions of his body, such as inserting fingers into his anus and rectum, administering drugs to sedate him, and x-raying his abdomen and pelvis, all without consent or any probable cause to believe that Mr. Dyer had inserted any foreign body into his rectum or swallowed any contraband.

## CAUSES OF ACTION

### Count 1
### (Section 1983 - Violation of Fourth and Fourteenth Amendments: Excessive Force)
### (Against Defendants Crossen and Lai)

43. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

44. At all relevant times, Crossen and Lai were employees of the City of Boston and acted under the color of state law.

45. Crossen used excessive and unreasonable force by restraining Mr. Dyer, removing his clothing, slapping his buttocks, digitally penetrating his anus and rectum, and by facilitating Reily's forcible administration of drugs and anal cavity search.

46. Lai, jointly and in concert with Crossen, used unreasonable force by restraining Mr. Dyer, by removing his clothing, by failing to prevent Defendant Crossen's use of force, and by facilitating Reily's forcible administration of drugs and anal cavity search.

47. By using excessive and unreasonable force against Mr. Dyer, Crossen and Lai deprived Mr. Dyer of his clearly established rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from excessive and unreasonable force.

48. As a result of the excessive and unreasonable force that Crossen and Lai used, Mr. Dyer suffered damages.

### Count 2
**(Section 1983 - Violation of Fourth and Fourteenth Amendments: Unreasonable Search)**
**(Against Defendants Crossen and Lai)**

49. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

50. At all relevant times, Crossen and Lai were employees of the City of Boston and acted under the color of state law.

51. Crossen and Lai jointly and in concert unreasonably subjected Mr. Dyer to an anal cavity search without a warrant, and also caused him to be subject to an unreasonable anal cavity search by Reily.

52. By conducting an unreasonable search of Mr. Dyer, and by causing Reily to conduct an unreasonable search of Mr. Dyer, Crossen and Lai deprived Mr. Dyer of his clearly established rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

53. As a result of the unreasonable searches that Crossen and Lai performed and caused to be performed, Mr. Dyer suffered damages.

**Count 3**
**(Section 1983 - Violation of Fourth and Fourteenth Amendments:**
**Excessive Force)**
**(Against Defendant Reily)**

54. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

55. At all relevant times, Reily was acting under the color of state law at the direction of Crossen and Lai and to aid them as law enforcement officers.

56. Reily used excessive and unreasonable force by forcibly administering sedative medication without Mr. Dyer's consent and by digitally penetrating Mr. Dyer's anus and rectum, without Mr. Dyer's consent or a warrant for a body cavity search

9

57. By using excessive and unreasonable force against Mr. Dyer, Reily deprived Mr. Dyer of his clearly established rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

58. As a result of the excessive and unreasonable force that Reily used, Mr. Dyer suffered damages.

## Count 4
### (Section 1983 - Violation of Fourth Amendment: Unreasonable Search)
### (Against Defendant Reily)

59. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

60. At all relevant times, Reily was acting under the color of state law at the direction of Crossen and Lai and to aid them as law enforcement officers.

61. Reily, without consent and without probable cause, x-rayed Mr. Dyer's abdomen and pelvis and performed an anal cavity search

62. Reily did not inquire if Crossen or Lai had a warrant to perform an invasive search Mr. Dyer, and in fact, no warrant authorized a body cavity search.

63. There was no probable cause to perform an invasive search of Mr. Dyer's body.

64. By conducting unreasonable searches of Mr. Dyer's body, Reily deprived Mr. Dyer of his clearly established right to be secure in his person from unreasonable searches, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

65. As a result of Riley's conduct, Mr. Dyer suffered damages.

## Count 5
### (Section 1983 - Violation of Fifth and Fourteenth Amendments: Due Process)
### (Against Defendants Crossen, Lai, and Reily)

66. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

67. By their conduct, Crossen, Lai, and Reily violated Mr. Dyer's substantive due process rights in a manner that shocks the conscience, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

68. As a result of the due process violations by Crossen, Lai, and Reily, Mr. Dyer suffered damages.

## Count 6
### (Civil Conspiracy)
### (Against Defendants Crossen, Lai, and Reily)

69. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

70. Crossen, Lai, and Reily conspired together to violate Mr. Dyer's constitutional rights.

71. As a result of the civil conspiracy among Crossen, Lai, and Reily, and the acts they took in furtherance of that conspiracy, Mr. Dyer suffered damages.

## Count 7
### (*Respondeat Superior*)
### (Against the Steward Defendants)

72. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

73. At relevant times, Reily acted as an employee, agent, and servant of the Steward Defendants.

74. Reily's intentional, reckless, and negligent actions were taken during the time and space of his employment with the Steward Defendants, were the kind of actions he was employed to perform, and were motivated at least in part by a purpose to serve his employers.

75. Reily's actions proximately caused Mr. Dyer to suffer damages.

76. The Steward Defendants are liable for those damages under the doctrine of *respondeat superior*.

## Count 8
### (Intentional Infliction of Emotional Distress)
### (Against Defendants Crossen, Lai, and Reily)

77. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

78. By forcing Mr. Dyer to undergo unwanted and unnecessary medical procedures, by ignoring his refusal of such medical procedures, by performing illegal searches of Mr. Dyer, and by using excessive force on Mr. Dyer, Crossen, Lai, and Reily, jointly and in concert, engaged in conduct that was extreme, outrageous, and beyond all possible bounds of decency.

79. As a result of the conduct by Crossen, Lai, and Reily, Mr. Dyer suffered emotional distress.

80. Crossen, Lai, and Reily knew, or should have known, that their behavior would likely cause emotional distress to Mr. Dyer.

81. Crossen, Lai, and Reily's extreme and outrageous conduct proximately caused Mr. Dyer's emotional distress.

82. Mr. Dyer's emotional distress has been, and continues to be, severe, and no reasonable person could be expected to endure such distress, including but not limited to insomnia, depression, anxiety, and paranoia.

83. As a result of Crossen, Lai, and Reily's actions, Mr. Dyer suffered damages.

**Count 9**
**(Negligent Infliction of Emotional Distress)**
**(Against Defendants Crossen, Lai, and Reily)**

84. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

85. By taking Mr. Dyer into custody and then transporting him to the hospital for medical care, Lai and Crossen owed Mr. Dyer a duty of care.

86. As a doctor to whom Mr. Dyer was taken due to his complaints of chest pains, Reily owed a duty of care to Mr. Dyer.

87. Crossen, Lai, and Reily breached their duties of care to Mr. Dyer by violently assaulting and humiliating him and also by performing multiple invasions of his body, without consent or medical necessity, including the administration of

medication to sedate Mr. Dyer, the insertion of fingers into his anus and rectum, and the x-raying of his abdomen and pelvis.

88. By failing to intervene and prevent Crossen and Reily from using unreasonable and excessive force when they conducted anal cavity searches of Mr. Dyer, Lai breached his duty of care to Mr. Dyer.

89. The negligence of Crossen, Lai, and Reily proximately caused Mr. Dyer to suffer emotional distress, including insomnia, depression, anxiety, and paranoia.

90. As a result of the negligence of Crossen, Lai, and Reily, Mr. Dyer suffered damages.

### Count 10
### (Assault and Battery, Indecent Assault and Battery, Rape, Administration of Drug to Enable Rape)
### (Against Defendants Crossen, Lai, and Reily)

91. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

92. By unlawfully restraining, forcibly medicating, and digitally raping Mr. Dyer, Reily, Crossen, and Lai, jointly and in concert, intentionally and without justification or excuse committed the torts of assault and battery, indecent assault and battery, rape, and administration of a drug to enable rape.

93. As a result of the tortious conduct by Crossen, Lai, and Reily, Mr. Dyer suffered damages.

## Count 11
## (Negligence)
## (Against the Steward Defendants)

94. Mr. Dyer realleges and incorporates each and every allegation contained in the preceding paragraphs.

95. The Steward Defendants had a duty of care to Mr. Dyer as a patient of Steward Carney Hospital.

96. Multiple employees and servants of the Steward Defendants, including security guards and nurses, heard Mr. Dyer's cries for help and were aware that he was being humiliated, forcibly medicated without his consent, and raped, but they did nothing to intervene or protect Mr. Dyer.

97. By failing to intervene to stop the humiliation, forcible medication, and assaults, the Steward Defendants breached their duty of care to Mr. Dyer.

98. As a result of the Steward Defendants' negligence, Mr. Dyer suffered damages.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Dyer respectfully requests that this Court:

1. Award compensatory and punitive damages;

2. Award reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

3. Award pre- and post-judgment interest on any award of damages; and

4. Award other relief that this Court deems just, appropriate, and proper.

## Jury Trial Demand

Mr. Dyer requests a jury trial on all causes of action so triable.

>Respectfully Submitted,
>
>**JOSEPH DYER**
>
>by his attorneys,
>
>*/s/ William Fick*
>William W. Fick, BBO# 650562
>Daniel N. Marx, BBO# 674523
>Rebecca N. Chapman, BBO# 694052
>FICK & MARX LLP
>24 Federal Street, 4th Floor
>Boston, MA  02110
>(857) 321-8360
>WFICK@FICKMARX.COM
>DMARX@FICKMARX.COM
>RCHAPMAN@FICKMARX.COM

Dated:  December 14, 2018

## Certificate of Service

I hereby certify that on December 14, 2018, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).
.

>*/s/ William Fick*