UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DYER,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>STEWARD CARNEY HOSPITAL, INC.,<br>STEWARD MEDICAL GROUP, INC,<br>MICHAEL REILY, M.D.; ZACHARY<br>CROSSEN, and THUAN LAI,<br>　　　　Defendants. | No. 17-cv-11452-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                              **October 5, 2021**

**I.     Introduction**

Plaintiff Joseph Dyer ("Dyer") filed this lawsuit alleging several claims against Defendants Steward Carney Hospital, Inc. ("Carney Hospital"), Steward Medical Group, Inc. ("SMG"), Michael Reily, M.D. ("Dr. Reily") and police officers Zachary Crossen ("Crossen") and Thuan Lai ("Lai") D. 103.  Dr. Reily, Carney Hospital and SMG (collectively, "Defendants") have each moved for partial summary judgment.  D. 233.  Dr. Reily seeks summary judgment as to the claims for intentional infliction of emotional distress (Count VIII) and negligent infliction of emotional distress (Count IX).  Id.  Carney Hospital and SMG seek summary judgment on the negligence claim (Count XI).  Id.  Carney Hospital also seeks summary judgment as to the claim for *respondeat superior* (Count VII).  Id.  For the reasons stated below, the Court DENIES Defendants' motion.

1

**II.     Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific admissible facts showing that there is a genuine, triable issue.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  In doing so, the nonmovant may not rest on the allegations or denials in its pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.     Factual Background**

The following facts are undisputed.  Dyer was arrested on May 13, 2015 for suspected involvement in a drug transaction. D. 235 ¶ 1.  During the arrest, Dyer stated he was experiencing chest pains.  Id. ¶ 2.  Subsequently, Dyer was transported to Carney Hospital for treatment, id., where he was treated by Dr. Reily, id. ¶ 3. Dr. Reily is an employee of SMG.  Id. ¶ 4.  Dyer contends that there are additional facts that support his opposition to the summary judgment motion.  Namely, Dyer alleges that he was forcibly subjected to two anal cavity searches without a warrant, first by Crossen and then by Dr. Reily.  D. 103 ¶¶ 25, 31, 33, 39.  Dyer claims that Carney Hospital staff heard as he screamed for help during the searches.  Id. ¶¶ 24–25, 33–34.  Dyer also argues that he did not consent to receiving medication or x-ray imaging of his abdomen

and pelvis ordered by Dr. Reily.  Id. ¶¶ 35, 40.  Without Dyer's consent, id. ¶ 40, Dr. Reily communicated to Crossen and Lai that the x-rays showed that Dyer "had not secreted any drugs or contraband in his body," id. ¶ 36.

IV. **Procedural History**

Dyer initiated this action against the City of Boston, Steward Health Care System, LLC ("Steward Health Care"), Carney Hospital, Dr. Reily, Crossen, Lai and Walter J. Ramos in Suffolk Superior Court on May 16, 2017.  D. 1.  City of Boston, Crossen and Lai subsequently removed the case to this Court on August 7, 2017.  Id.  The operative complaint is the second amended complaint.  D. 103.  Defendants have now filed their motion for partial summary judgment. D. 233.  The Court heard the parties on the pending motion and took the matter under advisement. D. 239.

V. **Discussion**

Defendants has moved for partial summary judgment, D. 233, on four of the eleven counts alleged in the second amended complaint, D. 103, which the Court will address in turn.

A. **Intentional Infliction of Emotional Distress (Count VIII)**

Dr. Reily has moved for summary judgment as to Count VIII, intentional infliction of emotional distress.  D. 233.  To state a claim of intentional infliction of emotional distress under Massachusetts law, a plaintiff must show:  "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it."  Limone

v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (alteration in original) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)). "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment d (1965)) (internal quotation mark omitted). Recovery for such a claim generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Doyle, 103 F.3d at 195 (quoting Foley, 400 Mass. at 99) (internal quotation marks omitted). Here, Dr. Reily challenges this claim as to Dyer's showing as to the causation and severity elements. D. 234 at 5.

    *1.    Causation*

Dr. Reily argues that he is entitled to summary judgment on Count VIII because Dyer "will not be presenting any expert testimony or evidence at trial" to establish that Dr. Reily's actions were the proximate cause of Dyer's emotional distress. Id. Dr. Reily contends that because "Dyer has a long history of emotional distress and mental disorders," Dyer must present expert testimony at trial to distinguish between preexisting mental health disorders and any distress allegedly caused by the nonconsensual anal search. Id. There is, however, no "bright-line rule that expert testimony is always necessary to prove the causation prong of [intentional infliction of emotional distress]. There may very well be situations where causation is within the common knowledge and experience of the layperson." Molloy v. Blanchard, 115 F.3d 86, 93 (1st Cir. 1997) (citation

4

omitted) (alteration in original) (finding that the plaintiff's own testimony was sufficient for the jury to decide as to causation); see Sindi v. El-Moslimany, 896 F.3d 1, 23 (1st Cir. 2018).  In Sindi, the defendant argued, among other things, that the jury could not have properly found causation for an intentional infliction of emotional distress claim where the plaintiff failed to present any expert testimony to distinguish a prior stress disorder from the alleged emotional distress.  Sindi, 896 F.3d at 23.  The First Circuit rejected the defendant's argument, concluding instead that even absent expert evidence, "the jury had ample reason to infer that [the defendant's] conduct caused [the plaintiff]'s emotional distress."  Id. (citing Cady v. Marcella, 49 Mass. App. Ct. 334, 341, (2000)); see Limone, 579 F.3d at 99 (noting that "[c]ausation is a factbound issue and, as such, is normally left to the trier").

     Here, Dyer was previously diagnosed with mental health conditions, including bipolar disorder and post-traumatic stress syndrome due to extensive childhood trauma and being shot by a gun in 1999.  D. 233-2 at 31; D. 233-3 at 35.  Dyer testified that as a result of the incident on May 13, 2015, he has trouble eating and sleeping, he does not trust medical professionals, and he suffers from suicidal thoughts.  D. 233-2 at 52–53.  Specifically, Dyer described that he suffers from nightmares about "doctors putting their hands in [his] ass."  Id. at 53.  Although there may be some overlap with respect to Dyer's prior mental health conditions and the alleged emotional distress, a layperson need not rely on expert testimony to infer a causal link between Dr. Reily's conduct and Dyer's symptoms.  D. 233-2 at 53.  Compare Sindi, 896 F.3d at 23 (explaining that "[the plaintiff]'s emotional distress was the foreseeable result of [the defendant's conduct]") with Ramos v. Bd. of Selectmen of Nantucket, 16 Mass. App. Ct. 308, 450 (1983) (noting that where there was no evidence of causation, and without expert testimony, "it would be wholly speculative to award [intentional infliction of emotional distress] damages" in case involving "difficulties

5

encountered by [plaintiff] in performing his road contract with the [defendant] town"). Because there is some disputed evidence of a causal link here, the Court finds that Dr. Reily's challenge fails as to the causation prong of Dyer's intentional infliction of emotional distress claim.

      2.      *Severity*

Dr. Reily's argument also fails as to the severity prong of this claim. Again, Dr. Reily cites no legal authority to support the proposition that a plaintiff must present expert testimony or evidence to prove that the alleged emotional distress is severe. See D. 234 at 5. It is well-settled that "Massachusetts law allows recovery in emotional distress cases based exclusively on lay testimony." Sindi, 896 F.3d at 23 (citing Poy v. Boutselis, 352 F.3d 479, 485–86 (1st Cir. 2003) (applying Massachusetts law). Similar to Sindi, Dyer testified about his alleged symptoms, D. 233-2 at 52–53.

Moreover, Dyer's testimony that he suffers from loss of sleep, nightmares, difficulty eating, and suicidal thoughts, id., establishes that his symptoms are sufficiently severe to withstand summary judgment, consistent with decisions from other courts. See, e.g., Kennedy v. Town of Billerica, 617 F.3d 520, 530–31 (1st Cir. 2010) (citing Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 874 (2007)) (citing case for notion that evidence of severe depression, suicidal thoughts, and sleep disturbances lasting longer than one month constitutes "severe" emotional distress). Dr. Reily does not necessarily challenge that Dyer's symptoms are sufficiently severe. D. 234 at 5, but instead relies again upon his argument that to succeed on a claim for intentional infliction of emotional distress, a plaintiff must present expert testimony to prove the severity of his symptoms. For the reasons discussed above, this challenge to the severity element also fails and, accordingly, the Court denies summary judgment to Dr. Reily on Dyer's intentional infliction of emotional distress claim.

**B.      Negligent Infliction of Emotional Distress (Count IX)**

Dr. Reily also moves for summary judgment as to Dyer's claim for negligent infliction of emotional distress.  D. 233.  To prevail on such a claim, a plaintiff must show:  "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by object symptomatology, *i.e.*, objective corroboration of the emotional distress alleged; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case."  Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 77 (D. Mass. 2020) (citing Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005).  "A successful negligent infliction of emotional distress claim . . . . must do more than allege 'mere upset, dismay, humiliation, grief and anger.'"  Bresnahan v. McAuliffe, 47 Mass. App. Ct. 278, 284 (1999) (quoting Sullivan v. Boston Gas Co., 414 Mass. 129, 134 (1993)).  Dr. Reily asserts that Dyer will be unable to prove objective corroboration of injury and causation, and therefore, this claim fails as a matter of law.  D. 234 at 4–5.

*1.      Objective Corroboration of the Injury*

Dr. Reily argues that Dyer has "provided no evidence of any physical injury or symptom as a result of emotional distress."  Id. at 4.  The "scope of physical harm required to sustain a negligent infliction of emotional distress claim has 'expanded [to a] range of symptoms that may provide the type of objective evidence to prove physical harm [including] symptoms that could be classified as more mental than physical.'"  Godette v. Stanley, 490 F. Supp. 2d  72, 81 (D. Mass. 2007) (alterations in original) (quoting Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 412 (2002)); see Bresnahan, 47 Mass. App. Ct. 278 at 282–83 (denying summary judgment where plaintiff alleged that her emotional distress manifested as uncontrollable crying spells, stomach

pain, severe headaches, loss of concentration, depression, anger, anxiety, loss of sexual relationship and attendance at grief-counseling sessions).

The record is at least disputed as to this showing. As described above, Dyer claims that as a result of the alleged negligence, he suffers from difficulty eating, sleep disturbances and suicidal ideations. D. 233-2 at 52–53. Other courts have deemed similar types of symptoms sufficient objective corroboration of emotional distress. See Kelly v. Brigham & Women's Hosp., 51 Mass. App. Ct. 297, 306 (2001) (finding that plaintiff's alleged depression, cramps, shortness of breath and nightmares were sufficient to withstand summary judgment); see also Ferragamo v. Chubb Life Ins. Co. of Am., 894 F. Supp. 33, 36–37 (D. Mass. 1995) (denying summary judgment where plaintiff alleged headaches, nausea, difficulty sleeping, decreased appetite and weight loss).

Dr. Reily contends that summary judgment in his favor as to this claim is appropriate because Dyer will not present expert evidence to corroborate the emotional distress. D. 234 at 4. Prior to Sullivan v. Boston Gas Co., 414 Mass. 129 (1993), "plaintiffs had to substantiate the objective symptomatology with 'expert medical testimony.'" Gutierrez, 437 Mass. at 412 (quoting Payton v. Abbott Labs., 386 Mass. 540, 556 (1982)). The Sullivan court, however, "relaxed this requirement, holding instead that plaintiffs must 'corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial.'" Id. (quoting Sullivan, 414 Mass. at 137–38). Importantly, "[w]hile expert medical testimony might be needed to make this showing, it [is] not mandatory." O'Neil v. Daimlerchrysler Corp., 538 F. Supp. 2d 304, 320–21 (D. Mass. 2008) (second alteration in original) (quoting Rodriguez, 443 Mass. at 702); see Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 52 (D. Mass. 2000) (noting that "a lack of expert medical testimony will not, in itself, defeat the plaintiff's cause of action").

Even absent expert testimony, Dyer's own representations about his symptoms are enough to meet the Sullivan requirement at the summary judgment stage. See Kelly, 51 Mass. App. Ct. at 306–07 (stating that "while it is a close question, the plaintiff testified to sufficient emotional distress to survive the defendants' motion for summary judgment"); see also Ferragamo, 894 F. Supp. at 36–37 (concluding that the plaintiff's sworn statement, on its own, was sufficient to allow the case to proceed past summary judgment). Accordingly, the Court finds that the symptoms as testified to by Dyer constitute objective corroboration of emotional distress sufficient to withstand summary judgment. The Court notes, however, that "should [Dyer] depend solely on his own testimony at trial, the weakness of his case might expose it to dismissal." Ferragamo, 894 F. Supp. at 37.

   *2. Causation*

Dr. Reily further argues that he is entitled to summary judgment as to Count IX because "[w]ithout expert testimony [Dyer] is not able to establish the causal link between the alleged injuries and [ ] Dr. Reily's alleged negligence." D. 234 at 4. Citing to Payton, 386 Mass. at 554, Dr. Reily again claims that "[e]xpert testimony is needed to differentiate between Dyer's preexisting mental health conditions and the emotional distress Dyer alleges was caused by the events at Carney Hospital on May 13, 2015. Id. Payton, however, does not stand for the proposition that expert testimony is required for a plaintiff to succeed on a negligent infliction of emotional distress claim. Rather, the case provides that plaintiffs must prove that the negligent conduct was the cause of the emotional distress. Payton, 386 Mass. at 557. Expert testimony is an example of how a plaintiff may go about proving the required causal link. See Smith v. City of Bos., No. 03-cv-10062-DPW, 2004 WL 1572626, at *12 (D. Mass. July 13, 2004) (stating that "[t]o succeed on his [NIED] claim, [the Plaintiff] must have produced objective evidence, for

9

example, by a medical expert, that would tend to corroborate and link his symptoms to his encounters with [the defendant]").

Accordingly, the Court finds that, at this stage, Dyer's deposition testimony is sufficient to raise triable questions of fact such that Dr. Reily is not entitled to summary judgment on the negligent infliction of emotional distress claim.

### C. Respondeat Superior (Count VII)

Carney Hospital seeks summary judgment as to Count VII for *respondeat superior* liability. D. 234 at 3–4. The doctrine of *respondeat superior* provides that an employer is subject to liability for torts its employees committed while acting within the scope of their employment. Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 319–20 (2002); see Restatement (Third) of Agency § 2.04 (Am. Law Inst. 2006). To prevail on a claim of vicarious liability, a plaintiff must demonstrate both that (1) an employer-employee relationship existed and (2) the alleged tortious conduct fell within the scope of employment. Dias, 438 Mass. at 321–22.

#### 1. Employer-Employee Relationship

Carney Hospital argues that it cannot be held liable for Dr. Reily's actions under *respondeat superior* because that "there was no employer-employee relationship between Dr. Reily and [ ] Carney Hospital." D. 234 at 3. Carney Hospital claims that "[i]n May 2013, [Dr. Reily] was employed by SMG" and "[Dyer] will be unable to present any evidence that an employer-employee relationship existed between [Carney Hospital] and Dr. Reily." D. 234 at 3–4.

Determining whether an employer-employee relationship exists is a case-specific, fact-dependent inquiry. See Dias, 438 Mass. at 322. In making that determination, courts weigh a number of factors. See id. (citing Restatement (Second) of Agency § 220(2) (1958)). The factors

properly considered include, but are not limited to, the method of payment, the parties' understanding of their relationship; the employer's direction and control of the employee's work; and the location of the work.  Id.; see Nat'l Ass'n of Gov't Emps. v. Labor Relations Comm'n, 59 Mass. App. Ct. 471, 474 (2003).  The extent to which the hiring party maintains control and direction over the hired party is often considered a particularly important factor in the analysis. Dias, 438 Mass. at 322; see Estate of Moulton v. Puopolo, 467 Mass. 478, 489 (2014).  "'[T]he very nature of the medical profession suggests that, in most instances, a physician acts as an independent contractor,' but 'a physician may be deemed a servant where the hospital controls details of the physician's physical activities.'"  Spencer v. Roche, 755 F. Supp. 2d 250, 262 (D. Mass. 2010), aff'd, 659 F.3d 142 (1st Cir. 2011) (alteration in original) (quoting Hohenleitner v. Quorum Health Res., Inc., 435 Mass. 424, 432 (Mass. 2001)).

Here, Dr. Reily testified that he practices medicine as an attending physician at Carney Hospital.  D. 237-1 at 11.  This is consistent with Dr. Reily's curriculum vitae, which lists Carney Hospital as his employer from July 2013 to present.  D. 237-2 at 1.  In fact, Dr. Reily testified that he began working at Carney Hospital after "seeing an ad . . . . that Carney Hospital . . . . was looking for physicians for the emergency department" and that he applied for a position at Carney Hospital.  D. 237-1 at 17.  Other physicians who work at Carney Hospital have control over Dr. Reily's compensation and schedule.  Id. at 14–15, 19–20.  Additionally, Dr. Reily is bound by "policies, practices or procedures that doctors working in the emergency department are supposed to follow."  Id. at 20; see D. 237-3; D. 237-4 D. 237-4 at 4.  Such policies, D. 237-3; D. 237-4, indicate that Carney Hospital, as a Steward Health Care System hospital, maintains "power of control or direction over [ ] [Dr. Reily]'s professional conduct."  See Hohenleitner, 435 Mass. at

11

432.  On this record, it is at least disputed whether Carney Hospital has an employer-employee relationship with Dr. Reily.

### 2. *Scope of Employment*

Once there is an employer-employee relationship established, courts must determine whether the alleged misconduct fell within the scope of employment. Dias, 438 Mass. at 322–23; see Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393, 404 (1990).  An employee's conduct falls within the scope of their employment if:  (1) it is of the kind for which he is hired to perform; (2) it occurs within the authorized time and space limits and (3) it was motivated, at least in part, by a purpose to serve the employer.  See Wang Labs., Inc. v. Bus. Incentives, Inc., 398 Mass. 854, 859 (1986).  Here, it is also at least disputed whether Dr. Reily was working within the scope of his employment with Carney Hospital when he treated Dyer and, accordingly, the Court denies its motion for summary judgment on this claim.

### D. **Negligence (Count XI)**

Carney Hospital and SMG (collectively, "Steward Defendants") seek summary judgment as to the negligence claim against them.  D. 234 at 5–7.  Massachusetts law provides that, "[t]o prevail on his negligence claims, [a plaintiff] must prove that the hospital owed him a duty of reasonable care, that the hospital committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage."  Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39 (2009) (citing Jupin v. Kask, 447 Mass. 141, 146 (2006)).

Dyer argues that Steward Defendants are liable for the allegedly negligent actions and omissions by Carney Hospital staff on May 13, 2015.  D. 103 ¶ 94; D. 237 at 8.  In addition to Dyer's allegations that Dr. Reily acted negligently, Dyer also claims that other Steward Defendants' employees "heard Mr. Dyer's cries for help and were aware that he was being

12

humiliated, forcibly medicated without his consent, and raped, but they did nothing to intervene or protect Mr. Dyer." D. 103 ¶ 94. According to Dyer, the failure to act by these other employees constitutes a breach of Steward Defendants' duty of care to Dyer. Id. ¶ 95.

Steward Defendants do not appear to dispute that they and their employees owed a duty of care to Dyer. See D. 234 at 5–7. Rather, Steward Defendants argue that they are not vicariously liable under *respondeat superior* for the allegedly negligent actions of staff on May 13, 2015 because Dyer has not identified any employees of the Steward Defendants who Dyer claims was negligent and because Dyer does not intend to submit expert testimony at trial. D. 234 at 5–7. As discussed above, a plaintiff alleging vicarious liability must demonstrate both that (1) an employer-employee relationship existed and (2) the alleged tortious conduct fell within the scope of employment. Dias, 438 Mass. at 321–22.

The record, however, shows that in addition to Dr. Reily, Dyer has, at least, identified a Carney Hospital nurse, Clare Condon ("Condon"), who treated Dyer on May 13, 2015, even as she did not recall the incident that Dyer alleges. D. 237-5 at 2–3, 6, 31. Although a jury may be free to credit Dr. Reily and/or Condon's testimony as to the basis of Dyer's negligence claim, the Court cannot conclude on this disputed record that Carney Hospital and SMG are entitled to summary judgment.

**VI.    Conclusion**

For the foregoing reasons, the Court DENIES Defendants' motion for partial summary judgment, D. 233, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge